UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HENRY C. WEDEMEYER, and <br> MARTHA L. WEDEMEYER, <br>           Plaintiffs, <br> vs. <br> CSX TRANSPORTATION, INC., <br>           Defendant. | No. 2:13-cv-00440-LJM-WGH |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant CSX Transportation, Inc. ("CSXT"), has moved for summary judgment on Plaintiffs', Henry C. ("Kit") and Martha L. Wedemeyer ("Martha") (collectively, the "Wedemeyers"), state law claims. For the reasons stated herein, the Court **GRANTS** CSXT's motion for summary judgment. Dkt. No. 33.

## I. FACTUAL BACKGROUND

The undisputed facts follow.[1]

CSXT is a Class I common carrier railroad, a "rail carrier" as defined by the Interstate Commerce Commission Termination Act ("ICCTA"), and one of the largest rail transportation companies in the United States. Burroughs Dec. ¶¶ 3–4. CSXT's rail network consists of approximately 21,000 route miles spanning 23 states (including the State of Indiana), the District of Columbia, and two Canadian provinces. *Id.* at 3. More

---

[1] The Wedemeyers provided no statement of facts in dispute, nor did they provide a response to CSXT's Statement of Material Facts Not in Dispute; therefore, the Court has taken the facts from CSXT's brief and any relevant facts that were followed by a proper citation to admissible evidence in the Wedemeyer's brief.

than 2,400 miles of CSXT railroad tracks are located in Indiana, including the tracks at issue here located in Roachdale, Putnam County, Indiana. *Id.* ¶ 5.

Historically, CSXT and its predecessors operated two primary rail lines through Roachdale, Indiana: (i) CSXT's active mainline running north-south through Roachdale from Chicago, Illinois, to Cloverdale, Indiana (the "Monon Line"); and (ii) CSXT's mainline running east-west carrying trains between Indianapolis, Indiana, and Decatur, Illinois (the "IndianapolisDecatur Line"). *Id.* ¶¶ 5–6. These two rail lines intersect in Roachdale. *Id.*

CSXT acquired the portion of the Indianapolis-Decatur Line at issue by a deed dated 1876 and an instrument of appropriation dated 1879 conveyed to CSXT's predecessor railroad, the Indianapolis, Decatur and Springfield Railway Company. Odom Dec. ¶ 5 & Ex. 1; *see also W. Union Tel. Co. v. Pa. R.R. Co.*, 195 U.S. 540, 570 (1904) (explaining that a railroad right-of-way is "more than an easement" but rather is "special and exclusive in its nature" and has "the substantiality of the fee"). By the Wedemeyers' own admission, CSXT has continuously operated trains through Roachdale over the east-west Indianapolis-Decatur Line since at least 1966. Kit Wedemeyer Dep. at 13:19–22.

On June 1, 1989, CSXT filed a petition for exemption with the Interstate Commerce Commission ("ICC") seeking to end its obligation to provide common carrier rail service on a 26.73-mile segment of mainline track on the Indianapolis-Decatur Line, located from Milepost 132.45 near Mitchellville (just outside of Indianapolis) west to Milepost 159.18 near Roachdale. Burroughs Dec. ¶ 7. In a decision served October 16, 1989, the ICC granted CSXT's petition, thereby giving CSXT conditional authority to end its obligation to provide common carrier rail service on the track segment. *See CSX*

2

*Transp. Inc.—Abandonment Exemption—In Putnam, Hendricks & Marion Cntys., Ind.*, No. AB-55 (Sub-No. 309X), 1989 WL 239516 (I.C.C. Sept. 26, 1989). On August 15, 1990, CSXT notified the ICC that it had abandoned the 26.73-mile rail segment effective August 10, 1990. Burroughs Dec. ¶ 9.

Once the ICC granted CSXT's petition for exemption, CSXT was relieved of its common carrier obligation on the 26.73-mile rail segment, and the segment was no longer "mainline track." *Id.* ¶¶ 8–9. CSXT then had several options with respect to this former mainline track, including (i) keeping the track in place and continuing to utilize it in rail transportation as non-mainline track, such as industry, spur, team, switching, or side track (collectively, "auxiliary track"); or (ii) physically removing the track. *See id.*; *see also* 49 U.S.C. § 10501(b); *The Atchison, Topeka & Santa Fe Ry. Co.— Abandonment Exemption—in Lyon Cnty., Kan.*, No. AB-52, 1991 WL 120344, at *3 (I.C.C. June 11, 1991) (explaining that a railroad must receive abandonment authority before it can convert mainline track to auxiliary track); *Union Pac. R.R. Co.— Abandonment Exemption—in Weld Cnty., Colo.*, No. AB-33, 2004 WL 2202235, at *1 (S.T.B. Sept. 30, 2004) ("After abandonment, the line will be converted to an industry track . . . ."); *The Atchison, Topeka & Santa Fe Ry. Co.—Abandonment Exemption— Lawrence, Kan.*, No. AB-52, 1988 WL 225784, at *1 (I.C.C. Feb. 1, 1988) ("Following the abandonment, [the railroad] will reclassify the track as spur . . . .").

The 26.73-mile segment for which CSXT had been relieved of its common carrier obligation did not include the mainline track west of Milepost 159.18 to Milepost 159.80 at Roachdale, just off the Monon Line. Burroughs Dec. ¶ 10. The mainline track from Milepost 159.18 to Milepost 159.80 has continuously remained in CSXT's mainline rail

network.  *Id.*

On October 16, 1992, Layne and Myers Grain Co., Inc. ("Layne and Myers") submitted a Track Lease Request form to CSXT seeking to lease a portion of CSXT's track for use at its Grain Facility in Roachdale.  *See* Burroughs Dec. ¶ 11 & Ex. 1.  The Grain Facility is located along East State Road 236 in Roachdale adjacent to CSXT's tracks to the east of the Monon Line and west of the Rail Line.  Parsons Dec. ¶ 3.  *See also* Odom Dec., ¶ 10, Ex. 3.

Layne and Myers entered into a Short Term (Interim) License Agreement with CSXT effective October 1, 1992, which was superseded by a long-term Track Lease agreement with CSXT titled "Track/Lease (Storage/Switching Operation)" dated September 16, 1993 (the "Track Lease").  Burroughs Dec. ¶ 11 & Ex. 2.

Effective May 1, 1997, the Track Lease was assigned by Layne and Myers to ConAgra, Inc.  *Id.* ¶ 12 & Ex. 3.  On May 30, 2001, CSXT and ConAgra, Inc. executed a supplemental agreement amending the Track Lease.  *Id.* ¶ 12 at Ex. 4.  Effective February 14, 2014, ConAgra changed its name to Gavilon Global Ag Holdings, LLC.  *Id.* ¶ 12 & Ex. 5.  The Court hereinafter refers to the aforementioned lessees collectively as the "Grain Shipper."

The Track Lease granted the Grain Shipper the right to use "7,097 feet of former Mainline Track" (the "Leased Track").  Odom Dec. ¶ 8 & Ex. 3.  As depicted below, the Leased Track begins approximately 175 feet east of North Indiana Street and continues 7,097 feet east, terminating approximately 80 feet west of County Road 425E.  *Id.*; Burroughs Dec. ¶ 11.  The Leased Track includes: (i) CSXT mainline track west of Milepost 159.18 and connecting to the Monon Line at Milepost 1598.8 and (ii) the former

4

mainline track east of Milepost 159.18 totaling approximately 4,327 feet, which continued to be used for railroad purposes as auxiliary track to serve the Grain Shipper. Odom Dec. ¶¶ 7–9. Approximately 2,588 feet of this former mainline track is adjacent to the Wedemeyers' property (i.e., the Rail Line). *Id.*



Odom Dec. ¶ 10, Ex. 3.

Pursuant to the Track Lease, the Leased Track is used for storage and switching of empty inbound railcars and loaded outbound railcars. Burroughs Dec. Ex. 2 at 1. CSXT further retains the right under the Track Lease to switch railcars on the tracks as necessary to conduct its own railroad operations and to operate over the Leased Track with its own locomotives and rail equipment. *Id.* at 2.

Pursuant to the Track Lease, CSXT delivers empty inbound railcars to the Grain Facility and transports loaded outbound cars in interstate rail commerce. Burroughs Dec. ¶ 13; Parsons Dec. ¶ 4. CSXT has complete records of annual railcar volumes transported from the Grain Facility dating back to 2001, and partial records are available for certain years dating back to 1990. Parsons Dec. ¶ 4. For the time period between 2001 through 2014, CSXT transported more than 15,000 carloads from the Grain Facility (an average of more than 1,000 carloads per year). *Id.* ¶ 5.

5

CSXT's records also demonstrate that CSXT has provided rail service to the Grain Facility since at least 1990, several years prior to the Track Lease.

The Wedemeyers own three parcels of real property in Roachdale that adjoin the Rail Line (the "Property"). Dkt. No. 1-1 at 6; Odom Dec. ¶ 9. Of the 4,327 feet of track located east of Milepost 159.18, 2,588 feet of track, more or less, is adjacent to the Property. Odom Dec. ¶¶ 9–10 & Ex. 3.

Kit grew up on the Property and recalls the Rail Line being located adjacent to the Property and trains using the Rail Line as far back as the late 1960s. Kit Wedemeyer Dep. at 13:19–15:3. The Wedemeyers both began living on the Property in 2003, and were aware of the presence of the Rail Line and its use in active rail transportation when they took up residence on the Property. *Id.*

Despite their long-standing knowledge of the Rail Line and trains using it, the Wedemeyers accepted a deed of the Property on February 3, 2005, and even chose to construct their residence adjacent to the active Rail Line. Kit Wedemeyer Dep. at 37:16–38:6 & Ex. 5.

Although the Rail Line remained in place and operational during the Wedemeyers' entire period of residence and ownership, the Wedemeyers did not complain to CSXT about the railroad operations on the Rail Line until on or about August 2, 2013. *See* Ans. to Def.'s First Set of Interrogs. at 2.

On November 22, 2013, the Wedemeyers filed the instant Complaint titled "Complaint to Quiet Title and for Trespass and Ejectment and Permanent Injunction" in Putnam Superior Court. Dkt. No. 1-1 at 6–8. The Complaint does not have separate claims for relief but seeks "immediate and sole possession" of the real property

underlying the Rail Line and demands that CSXT "remove its ties, rails, and ballast" from the Rail Line. *Id.* at 7.

In their Complaint, Plaintiffs allege that CSXT "abandoned said corridor," including the Rail Line, in December 2003, pursuant to a Declaratory Judgment filed in Hamilton County Superior Court in a 1993 case styled *Clark v. CSX Transportation, Inc.*, No. 29D039308-CP-404. Dkt. No. 1-1 at 6, 13–17. In fact, the Declaratory Judgment was filed in Putnam County on February 6, 2004. Dkt. No. 49-1. In a part relied upon by the Wedemeyers, the Declaratory Judgements states:

> 4. Where the title held by CSX to that portion of the Settlement Corridor has been determined pursuant to the Settlement Agreement to be less than fee title, the designation of "Easement" appears in the column titled "Interest Status" in Exhibit A. With respect to these portions of the Settlement Corridor, the Court declares that the Settlement Class Member's title to the portion of the Settlement Corridor adjacent to their property is superior to any claim of title by CSX, subject to any prior adjudication of title in a Court of law in which the Class Members' title or the title of the Class Member's predecessor in interest was determined not to be superior to the title of CSX.

Dkt. No. 49-1, ¶ 4. On February 25, 2004, Jerry L. Jeffries, the prior owner of the Property, filed affidavits of ownership with the Putnam County Recorder stating that he held superior title to the real estate underlying the Rail Line. Dkt. No. 1-1 at 10–12; Dkt. No. 49-2.

Kit attests that on or around September 10, 2013, he spoke to Leah Weider ("Weider"), the CSXT Property Services Group Manager, by telephone and directed CSXT to vacate and cease any further entry onto the disputed property. Dkt. No. 49-3, ¶ 12.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Goodman v. Nat'l Sec. Agency, Inc.*. 621 F.3d 651, 654 (7th Cir. 2010). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Goodman*, 621 F.3d at 654; *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

CSXT argues that the ICCTA preempts the Wedemeyer's state law claims that seek to interfere with the easement it enjoys over the property because their suit seeks to stop all use of the tracks on the relevant stretch. Dkt. No. 34 at 9-18; Dkt. No. 54 at 5-12. CSXT also asserts that, if they are not preempted, the Wedemeyer's claims fail as a matter of law based on the statute of limitations and/or the doctrine of laches.

The Wedemeyers insist that their claims are not preempted because they are not

"regulations" under the ICCTA, rather they are claims based on a contract, namely the Consent Decree and the terms therein. Dkt. No. 48 at 5-9, 11-13. Further, the Wedemeyers aver that the statute of limitations did not begin to run until 2013 when Kit spoke with Weider directing CSXT to vacate and cease any further entry onto the Wedemeyer's property. *Id.* at 10, 13-14.

The problem for the Wedemeyers is the language of the ICCTA discussing the broad jurisdiction of the Surface Transportation Board ("STB"), which states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). Transportation is defined to include railroad equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." 49 U.S.C. § 10102(9). The plain meaning of this language is that the remedies of the ICCTA are exclusive if it involves the control or use of rail transportation. Here, the Wedemeyers seek to use state law to regulate (terminate) CSTX's use of the easement over their property; there is no material question of fact that such an action "would have the effect of preventing or unreasonably interfering with railroad transportation." *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 679 (7th Cir. 2011) (quoting *CSX Transp., Inc.—Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *3 (S.T. B. May 3, 2005)). As a result, it is preempted as applied. *See id.* (discussing the "as applied" standard for determining preemption under the ICCTA). This conclusion is supported by other courts that have addressed the intersection of a state law cause of action and the ICCTA. *See Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1069-70 (11th Cir. 2010) (state law nuisance claim

preempted); *Friberg v. Kansas City S. Ry., Co.*, 267 F.3d 439, 444 (5th Cir. 2001) (negligence claim preempted); *B&S Holdings, LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252, 1258 (E.D. Wash. 2012) (state law adverse possession, quiet title, and prescriptive easement claims preempted); *14500 Ltd. v. CSX Transp., Inc.*, No. 1:12CV1810, 2013 WL 1088409, at *5 (N.D. Ohio Mar. 14, 2013) (same). The STB has taken a similar position. *See, e.g., Mark Lange*, S.T.B. Finance 35037, 2008 WL 219583, at *3 (S.T.B. Jan. 24, 2008) (state law nuisance claim preempted).

Moreover, the consent decree is not a contractual arrangement under which the Wedemeyers have sought to bring suit. Rather, it merely decided the nature of CSTX's property interest in the subject land. The decree does not change the fact that the ICCTA preempts any attempt to regulate rail transportation, which has been broadly construed to include prohibition of or the use of rails for moving property. 49 U.S.C. § 10102(9). Contrary to the Wedemeyer's position, this Court concludes that the term "regulate" does not only refer to a state regulation or state action; rather it refers to controls or limitations of any kind. There is no question that the Wedemeyer's state law claims seek to control or limit CSTX's use of the rail line because they seek to prohibit CSTX from using the rail line at all.

### III.  CONCLUSION

For the reasons stated herein, Defendant CSX Transportation, Inc.'s, Motion for Summary Judgment is **GRANTED**.  The Court will enter judgment in favor of CSX Transportation, Inc., accordingly.

IT IS SO ORDERED this 20th day of October, 2015.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alexander Pape Orlowski
BARNES & THORNBURG LLP
aorlowski@btlaw.com

Matthew B. Barr
BARNES & THORNBURG LLP
mbarr@btlaw.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

James E. Ayers
WERNLE RISTINE & AYERS
ayersj@wralaw.com